NO. 07-09-0176-CR, 07-09-0177-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 18, 2009
______________________________

JOSE LUIS PRADO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,938-A, 55,939-A; HONORABLE HAL MINER, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
ORDER OF ABATEMENT AND REMAND
Â Â Â Â Â Â Â Â Â Â Appellant, Jose Luis Prado, filed a notice of appeal from his convictions for
manufacture and delivery of a controlled substance and sentences in Cause Nos. 55938-A
and 55939-A in the 47th District Court of Potter County, Texas (the trial court). The
appellate court clerk received and filed the trial court reporterâs record on July 22, 2009. 
However, no trial court clerkâs record has been filed. 
Â Â Â Â Â Â Â Â Â Â On July 1, 2009, this Court received a request from the district clerk requesting an
extension of time to file the clerkâs record on the basis that appellant had not paid or made
arrangements to pay for the preparation of the record. Further, the district clerk noted that
no court-appointed attorney had been assigned to the case. On July 6, 2009, this Court
granted the district clerkâs request for extension and directed appellant to certify whether
he had complied with Texas Rule of Appellate Procedure 35.3(a)(2) by July 27, 2009. 
Further, appellant was notified that the failure to comply with this deadline may result in the
appeal being abated and the cause being remanded to the trial court for further
proceedings. See Tex. R. App. P. 37.3(a)(2). To date, appellant has failed to comply with
this Courtâs directive. 
Â Â Â Â Â Â Â Â Â Â Accordingly, this appeal is abated and the cause is remanded to the trial court. Id. 
Upon remand, the judge of the trial court is directed to immediately cause notice to be
given of and to conduct a hearing to determine: (1) whether appellant desires to prosecute
this appeal; (2) if appellant desires to prosecute this appeal, whether appellant is indigent
and, if not indigent, whether counsel for appellant has abandoned the appeal; (3) if
appellant desires to prosecute this appeal, whether appellantâs present counsel should be
replaced; and (4) what orders, if any, should be entered to assure the filing of appropriate
notices and documentation to dismiss appellantâs appeal if appellant does not desire to
prosecute this appeal or, if appellant desires to prosecute this appeal, to assure that the
appeal will be diligently pursued. If the trial court determines that the present attorney for
appellant should be replaced, the court should cause the clerk of this court to be furnished
the name, address, and State Bar of Texas identification number of the newly-appointed
or newly-retained attorney. 
Â Â Â Â Â Â Â Â Â Â The trial court is directed to: (1) conduct any necessary hearings; (2) make and file
appropriate findings of fact, conclusions of law, and recommendations and cause them to
be included in a supplemental clerkâs record; (3) cause the hearing proceedings to be
transcribed and included in a supplemental reporterâs record; (4) have a record of the
proceedings made to the extent any of the proceedings are not included in the
supplemental clerkâs record or the supplemental reporterâs record; and (5) cause the
records of the proceedings to be sent to this Court. Id. In the absence of a request for
extension of time from the trial court, the supplemental clerkâs record, supplemental
reporterâs record, and any additional proceeding records, including any orders, findings,
conclusions, and recommendations, are to be sent so as to be received by the Clerk of this
Court not later than September 11, 2009.


 Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Per Curiam
Do not publish.



on Locked="false" Priority="69" Name="Medium Grid 3 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0245-CR

Â 

IN THE
COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL E

Â 

JULY 18, 2011

__________________________

Â 

TIMOTHY
LEE GONZALES,  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellant


v.

Â 

THE STATE OF
TEXAS,Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellee

__________________________

Â 

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

Â 

NO. 56,439-B; HONORABLE JOHN B. BOARD, PRESIDING

__________________________

Â 

Memorandum Opinion

__________________________

Â 

Before QUINN, C.J., CAMPBELL,
J., and BOYD, S.J.[1]

Â Â Â Â Â Â Â Â Â Â Â  Timothy Lee Gonzales was convicted
of murder.Â  He seeks to overturn that
conviction by contending 1) the evidence is legally insufficient to show that
he intentionally or knowingly caused a death, 2) the jury charge caused him
egregious harm by failing to limit the culpable mental state to the result of
his conduct, and 3) the self-defense jury instruction caused him egregious harm
by allowing a finding of self-defense only if a reasonable person would not
have retreated.Â  We affirm the judgment.Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Background

On the night of August 28, 2007, appellant went riding in a
car with his two friends Juan Granados and Jesus Mascorro.Â  Appellant had recently purchased a gun and
the three men discussed shooting it.Â 
Finding no place to do so, Granados and appellant eventually fired off
some shots in the country.Â  They then
returned to town and were traveling on Amarillo Boulevard with Granados driving
and appellant in the front passenger seat.Â 


As they drove, the three were passed by a blue pickup truck
traveling at a high rate of speed.Â  In
response, Granados accelerated, passed the truck, and cut into its lane before
stopping at a red light.Â  The truck
rapidly approached GranadosÂ vehicle from behind and stopped.Â  Granados then put his car into reverse, moved
backwards, and apparently made contact with the truck while the street light
remained red.Â Â  

Granados and the person driving the truck, Cuevas Mata,
exited their respective vehicles and began to argue.Â  During that confrontation, appellant rose
through the sunroof of the car, pointed his gun at Mata, pulled the trigger of
the allegedly unloaded weapon, and told Mata to leave them alone.Â  Mata then lowered himself behind his truckÂs
door.Â  Granados returned to his car, ran
the red light, and sped down the street.Â 
Mata did the same and sped up to drive alongside the car.Â  When the two vehicles were approximately
side-by-side, appellant again appeared in the sunroof, pointed his handgun at
the truck (though Granados said he pointed the weapon at Mata) and firedÂ  multiple shots.Â  A number of bullets hit the truck and one or
more struck Mata.Â  The latter then
swerved from his lane, crashed into a motel, exited the vehicle staggering, and
died from gunshot wounds. 

Legal Sufficiency

Appellant first argues that the evidence was legally
insufficient to show that he Âshot to kill.ÂÂ 
Rather, he allegedly shot simply to defend himself because he was scared
of Mata.Â  We review challenges to the
sufficiency of the evidence under the standard discussed in Jackson
v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).Â  And, since appellant was indicted for murder,
the State was required to prove that he intended the death that resulted from
his actions. See Cook
v. State, 884 S.W.2d
485, 490 (Tex. Crim. App. 1994); see also Chaney v. State, 314 S.W.3d 561, 563 n.2 (Tex. App.ÂAmarillo
2010, pet. refÂd) (stating that murder is a Âresult
of conductÂ offense which means the culpable mental state focuses on the result
of the conduct).Â Â Â  Because a culpable
mental state may be established through circumstantial evidence,Â  Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App.
1978), an intent to kill or cause death can be inferred from the use of a
deadly weapon in a deadly manner.Â  Medina
v. State, 7 S.W.3d 633,
637 (Tex. Crim. App. 1997); Adanandus
v. State, 866 S.W.2d
210, 215 (Tex. Crim. App. 1993).Â  It may also be
inferred from other pertinent acts, words, and conduct of the accused.Â  Hernandez
v. State, 819 S.W.2d
806, 810 (Tex. Crim. App. 1991).Â  

Here, appellant twice pointed a firearm at Mata.Â  He also pulled its trigger in each
instance.Â  Though apparently unloaded
when it was first pointed at the victim, the handgun was loaded by appellant
before he discharged it at or in the direction of Mata after both cars ran the red
traffic light and sped down the road.Â 
Furthermore, nothing of record illustrated that Mata was armed, though
some evidence suggests that he may have tried to swerve into GranadosÂ car at
one point.Â  After firing the weapon,
Granados, appellant, and the other individual drove away.Â  Appellant also threw his gun out the window
(though it was later found), and lied to the police about being in a
confrontation and shooting a firearm at someone.Â Â  The foregoing is some evidence upon which a
jury could rationally conclude, beyond reasonable doubt, that
he intended to cause MataÂs death.Â  And,
that appellant may have testified that he acted in self-defense because he
feared Mata was something a rational jury was free to believe.Â  But, it was equally free to discredit the
testimony, which it obviously did. See Sorto
v. State, 173 S.W.3d
469, 475 (Tex. Crim. App. 2005) (recognizing that the option to believe or
disbelieve testimony lies with the jury).Â 
By no means was it obligated to believe appellant.Â  So, the verdict is supported by legally
sufficient evidence, and we overrule the issue.Â 
See
Johnson v. State, 959
S.W.2d 284, 288 (Tex. App.ÂDallas 1997, pet. refÂd)
(finding evidence of the intent to kill legally sufficient when the defendant
and the driver of a van had exchanged words earlier in the evening, the
defendant chased the van and pulled alongside of it, the defendant shot through
the passenger side of the van five to seven times, and most of the bullets
entered the van aimed at the deceased).

Jury Charge

Next, appellant complains of the definitions of
ÂintentionallyÂ and ÂknowinglyÂ used in the jury charge because they failed to
limit the culpable mental state to the result of his conduct.Â  We overrule the issue.

The definitions in question tracked the language specified in
the applicable statute.Â  See Tex.
Penal Code Ann. Â§6.03(a)
& (b) (Vernon 2011).Â 
That is, neither were modified to fit the
nature of the crime at issue, i.e. murder.Â  So,
the jury was told what ÂintentionallyÂ and ÂknowinglyÂ meant with regard to
both oneÂs conduct and the result of oneÂs conduct.Â  This is problematic since the mens rea
applicable to murder focuses not upon the actorÂs mental state viz the acts that culminate in death but
rather upon the accusedÂs interest or desire (for
lack of better terms) in causing death itself while undertaking the particular
acts.Â  Furthermore, a trial court errs
when it includes the complete statutory definition of intentionally or
knowingly in a murder charge, as the court did here.Â  Cook v. State, 884 S.W.2d at 491; Chaney v. State, 314 S.W.3d at 567-68.Â  However, appellant did not object to the
error; so, any resulting harm must be egregious before we can reverse the
judgment.Â  Almanza
v. State, 686 S.W.2d 157,
172 (Tex. Crim. App. 1984); Chaney v.
State, 314 S.W.3d at 568.Â  And we find no such
harm for several reasons.

First, the application paragraph in the charge corrected the
mistake.Â  It instructed the jury that
appellant could not be convicted of the crime unless he Âintentionally or knowingly
cause[d] the death of . . .Â Mata.Â  When that happens, i.e. when the application paragraph is
accurately worded, harm is seldom egregious.Â 
Medina
v. State, 7 S.W.3d at 640.Â  

Furthermore, the quantum of evidence illustrating that
appellant intended to cause MataÂs death is not meager.Â  He does not deny twice pointing the handgun
at Mata, or twice pulling its trigger, or loading the gun after the chase
began, or firing multiple rounds, or that he feared Mata and what the latter
was going to do, or thatÂ  simply
brandishing the firearm was not enough to deter his victim.Â  Indeed, that he claimed self-defense tends to
indicate that he discharged the weapon as an ultimate means of stopping
Mata.Â Â Â  

Third, it may be that the prosecution discussed the
intentional nature of appellantÂs acts during its closing.Â  Yet, contrary to appellantÂs suggestion, that
does not mean that the State sought to mislead the jury into convicting simply
if appellantÂ  intentionally performed the
act of shooting the weapon in the direction of Mata.Â  As previously mentioned, the nature of oneÂs
conduct and words are important in assessing mens rea
for murder.Â  Indeed, that often is the
only evidence upon the topic since defendants seldom testify or otherwise admit
that they wanted to kill the deceased.Â 
The manner in which conduct occurs may also be telling.Â  For instance, simply throwing a snowball at
someone could be interpreted as the actor having either a malicious or innocent
and playful mindset.Â  But, if the actor
picked up rocks, added them to the mixture, and then aimed for his targetÂs
head, then his purpose or intent could be interpreted quite differently.Â  One could easily say that he was not simply being
playful.Â  Indeed, the intentional nature
of those additional acts could well be viewed as evidence that the actor
expressly desired to injure his target.Â 
So, it is not ipso facto wrong to ask jurors to look at the intentional nature
of conduct to infer whether the actor intended the results of his conduct.Â  And because appellant did not admit to having
an intent to kill Mata, the prosecutor was free to
focus upon the intentional nature of appellantÂs conduct in deciding whether he
committed murder. 

As for appellantÂs reliance on our opinion in Chaney
v. State, we find it
misplaced.Â Â  While we reversed the
conviction even though the application paragraph was correct, the circumstances
in Chaney differed greatly from those
here.Â  Chaney was not aiming a gun at the
victim but rather attempting to retrieve his weapon from someone who had taken
it.Â  The firearm discharged during the
struggle, not after the accused loaded and aimed it at anyone (as appellant did
here).Â  Moreover, we recognized the
rather sparse evidence purportedly illustrating that Chaney sought to kill his
acquaintance.Â  See
Chaney v. State, 314 S.W.3d at 570-71.Â 
Simply put, these distinctions render Chaney of little value to appellant.Â  

In sum, the definitions at issue may have been wrong, but any
ensuing harm that may have arisen was not egregious.

Â  Jury
Instruction

Finally, appellant argues that he was egregiously harmed by
the trial courtÂsÂ Â  instruction on
self-defense.Â  Its wording purportedly
denied him the defense since it indicated that he could not act in self-defense
if he was retreating, as the evidence purportedly showed him to be doing.Â  

Under the statute in effect when this offense occurred, use
of deadly force was justified only when retreat was unreasonable.Â  Yarborough v. State, 178 S.W.3d 895, 903 (Tex.
App.ÂTexarkana 2005, pet. refÂd).Â  Thus, the applicable law required the
instruction given by the court.Â  See
Tex.
Penal Code Ann. Â§9.32(a)(2) (VernonÂ  2003).[2]Â  Moreover, it has been held that the statutory
language is sufficient to instruct the jury even when retreat has begun before
the use of deadly force.Â  See
Westbrook v. State, 846 S.W.2d 155, 157 (Tex. App.ÂFort Worth 1993, no pet.) (holding
the same when the defendant sought a modification to the jury charge because he
allegedly used deadly force while retreating and contended that the jury could
not acquit him on self-defense if they found he was not retreating).Â  The trial court did not write the statute but
simply applied it as written.Â Â  

Accordingly, the judgment is affirmed.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Brian
Quinn 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Do
not publish.











[1]John T. Boyd, Senior Justice, sitting by assignment.





[2]This
statute was amended effective September 1, 2007, to delete the requirement that
a reasonable person in the actorÂs situation would not have retreated.Â  Tex. Penal Code Ann. Â§9.32
(Vernon 2011).Â